IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**CHRYSTINE HEIMDAL,**

*Plaintiff*,

*v.*

**SNB CAPITAL 18 LLC**,

*Defendant.*

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Chrystine Heimdal ("Plaintiff Heimdal" or "Heimdal") brings this Class Action Complaint and Demand for Jury Trial against Defendant SNB Capital 18 LLC d/b/a SNB Capital ("Defendant" or "SNB Capital") to stop Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing telemarketing calls to consumers without consent including pre-recorded calls and calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Heimdal, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Heimdal is a resident of Twin Falls, Idaho.

2. Defendant SNB Capital is a New York registered company headquartered in New York, New York. Defendant SNB Capital conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters in this District and makes calls from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant has its headquarters in this District, and the wrongful conduct giving rise to this case was directed by Defendant from this District.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2026 alone, at a rate of 141.9 million per day. www.robocallindex.com (last visited July 26, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. SNB Capital sells merchant loan solutions to businesses throughout the US.[3]

15. SNB Capital places calls to consumers to generate business for itself.

16. SNB Capital places calls using prerecorded messages, as per Plaintiff's experience.

17. SNB Capital places calls to consumers who registered their phone number on the DNC.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://snbcapitalus.com/

18. Consumers have posted complaints online about unsolicited telemarketing calls and text messages they received from SNB Capital, including:

> **pankratztruckinghotmail.com** Jun 4, 2026
> US • 3 reviews
>
> **Fake offers**
>
> Fake offers
> Do not believe offers from SNB Capital. They text you fake offers like you qualify for it and then you send them your information and they give you every excuse why they can't do what they texted or emailed. I get texts from different people multiple times a month and I have gotten sick of it. [4]

> EB **Eric B.** Jun 12, 2026
> US • 4 reviews
>
> **Mike G. called me an F'n degenrate**
>
> Because I have done MCA's in the past, I get inundated with 35 calls a day and another 25 texts EVERY DAY, including from these guys. Yesterday I got a text from Mike G. at SNB Capital. I asked for his email so I could send him a synopsis of what I was looking for, which was a term loan to cash out my MCA's, which is a loss leader they throw out there. I have 8 MCA's all within the same timeframe because no single company would do what I needed for a purchase. At the time I took them, I had no idea just how bad they are viewed on your business credit profile. [5]

19. In response to these calls, Plaintiff Heimdal brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

---

[4] https://www.trustpilot.com/review/snbcapitalus.com
[5] Id.

## PLAINTIFF HEIMDAL'S ALLEGATIONS

20. Plaintiff Heimdal is the sole owner and user of her cell phone number ending in 7280.

21. Plaintiff Heimdal registered her cell phone number on the DNC on January 15, 2008.

22. Plaintiff Heimdal uses her cell phone number for personal use only as one would use a landline telephone number in a home.

23. Plaintiff Heimdal uses her cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for her other household purposes.

24. Plaintiff Heimdal's cell phone plan is paid for by the Plaintiff herself.

25. Plaintiff Heimdal has never had her cell phone number associated with a business.

26. Plaintiff Heimdal does not own or operate a business.

27. Plaintiff Heimdal has never applied for and has never obtained any kind of business financing.

28. The calls described below are telephone solicitations because they encouraged the purchase of, and the commercial availability of Defendant's financing products.

29. Plaintiff Heimdal received multiple unsolicited calls from Defendant to her cell phone.

30. All of the calls resulted in one of three different pre-recorded voicemail messages.

31. The first pre-recorded voicemail states:

> "Hey, how's it going? It's Josh with SNB. The reason for the call today is because my company's actually rolling out a 24-month unsecured line of credit that could get rid of your current positions and just put you on to just one monthly payment. Call me back if you're interested in hearing about this. I look forward to getting this done. Have a good day."

32. Plaintiff received unsolicited calls to her cell phone that resulted in this same pre-recorded voicemail on:

April 14, 2026 at 11:32 AM from 646-914-9325;

May 4, 2026 at 3:17 PM from 203-220-2221; and

May 14, 2026 at 3:26 PM from 208-789-0524.

33. The second pre-recorded voicemail states:

"Hey, it's Jake with SNB. Listen, the reason for the call today is because my company's rolling out a 24-month unsecured line of credit that could get rid of current MCA positions and put you out to just one monthly payment. If this is something you're interested in hearing more about, call me back at 312-801-5013. That's 312-801-5013. Thank you."

34. Plaintiff received unsolicited calls to her cell phone that resulted in this same pre-recorded voicemail on:

April 22, 2026 at 11:58 AM from 208-400-6128;

April 27, 2026 at 9:05 AM from 208-402-8101;

April 28, 2026 at 2:35 PM from 208-400-6128;

April 30, 2026 at 10:10 AM from 208-402-8101;

May 4, 2026 at 11:22 AM from 208-400-6128;

May 5, 2026 at 1:03 PM from 208-789-0524;

May 11, 2026 at 10:53 AM from 208-402-8101; and

June 18, 2026 at 1:44 PM from 208-452-0678.

35. The third pre-recorded voicemail states:

"Hey, how's it going? It's Jason with SNB. I'm actually calling you with great news. Our company's offering a new line of credit program that goes out with the 24-months and I just wanted to see if you'd be interested in something like that paying off all your current daily or weekly payments and putting you onto just one monthly payment. Call me back if you get this. My number here is 520-702-3853. That's 520-702-3853. Thanks and we'll talk soon."

36. Plaintiff received unsolicited calls to her cell phone that resulted in this same pre-recorded voicemail on:

June 18, 2026 at 10:11 AM from 208-469-3873; and

July 1, 2026 at 4:16 PM from 208-457-7027.

37. Plaintiff could easily recognize that the messages she received, as described above, were prerecorded because she received each of the three prerecorded messages multiple times, and each time she received one it was identical to every prior instance of that same message: same words, same voice, intonation, pacing, background sounds, and pauses.

38. The voicemails from Jake request a call back to 312-801-5013.

39. When 312-801-5013 is called, Jake answers and confirms that the company name is SNB Capital US, with a domain name of snbcapitalus.com.[6]

40. The website for snbcapitalus.com shows that the company name is SNB Capital 18 LLC:

> TERMS OF USE
> By signing below, each of the above listed business and business owner/officer (individually and collectively, "you") authorize SNB CAPITAL, 18 LLC ("SNB") and each of its representatives, successors, assigns and designees that may be involved with or acquire commercial loans having daily repayment features or purchases of future receivables [7]

41. Plaintiff Heimdal has never provided her prior express written consent to receive pre-recorded calls from SNB Capital.

42. Plaintiff Heimdal has never done business with SNB Capital.

43. The calls that Plaintiff Heimdal received from SNB Capital were placed in violation of the TCPA.

---

[6] As per an investigation conducted by Plaintiff's attorneys.
[7] https://snbcapitalus.com/apply-now/

44. The unauthorized solicitation calls that Plaintiff received from Defendant SNB Capital have harmed Plaintiff Heimdal in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

45. Seeking redress for these injuries, Plaintiff Heimdal, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

46. Plaintiff Heimdal brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) SNB Capital called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty one days, (4) for substantially the same reason Defendant called Plaintiff.

47. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Heimdal anticipates the need to amend the Classes definition following appropriate discovery.

48. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

49. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

50. **Adequate Representation**: Plaintiff Heimdal will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Heimdal has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Heimdal and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Heimdal nor her counsel has any interest adverse to the Classes.

51. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Heimdal. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Heimdal and the Pre-Recorded No Consent Class)**

52. Plaintiff Heimdal repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

53. The Defendant transmitted unsolicited telephone calls to Plaintiff Heimdal and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

54. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

55. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Heimdal and the Do Not Call Registry Class)**

56. Plaintiff repeats and realleges paragraph 1-51 of this Complaint and incorporates them by reference herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action. 47 U.S.C. § 227(c).

59. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class who registered their telephone numbers on the National Do Not Call Registry.

60. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Heimdal and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Heimdal and the Do Not Call Registry Class suffered damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Heimdal requests a jury trial.

**CHRYSTINE HEIMDAL**, individually and on behalf of all others similarly situated,

DATED this 18th day of August, 2026.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC

11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (pro hac vice forthcoming)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*